# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### HATTIESBURG DIVISION

RUTH LEWIS; LINDA HAYES COULTER;
JAMES HAYES; JOHN KEYES; VERRIS MAGEE;
ROERT MAGEE; JIMMIE BAGGETT; and
GLEN ROGERS                                                          **PLAINTIFFS**

**VERSUS**                                          **CIVIL ACTION NO. 2:07cv47KS-MTP**

KINDER MORGAN SOUTHEAST
TERMINALS, LLC; DOES 1-10, ET AL                             **DEFENDANTS**


**AND**

RHONDALE L. BARKER AND
EARL CRAFT                                                           **PLAINTIFFS**

**VERSUS**                                          **CIVIL ACTION NO. 2:07cv48KS-MTP**

KINDER MORGAN SOUTHEAST
TERMINALS, LLC; DOES 1-10, ET AL                             **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#131 in
2:07cv47 and #117 in 2:07cv48]** filed on behalf of the defendants in each of these two
cases. The court, having reviewed the motion, the response, the briefs of counsel, the
pleadings and exhibits on file in each case and being otherwise fully advised in the
premises finds that the motions should be denied.  The court specifically finds as
follows:

**FACTUAL BACKGROUND**

This case involves the spillage of gasoline from a bulk storage terminal in Collins, Mississippi.  The bulk terminal at issue ("Collins Terminal') was built in approximately 1969 and was owned and operated by Exxon Mobil until Kinder Morgan Southeast Terminals, LLC ("KMST") purchased the facility in the Spring of 2004. The function of the terminal is to receive gasoline through pipelines and store it in above-ground tanks for distribution via tank trunks.  Tank trucks use a loading rack at the terminal to pump gasoline from the storage tanks and into the tank trucks.  The trucks can also use that rack to drain product from their tanks.

The terminal is manned only during the day from 7:00 A.M. to 3:30 P.M.  It has various equipment designed to contain any leak or spill that may occur and is also equipped with alarms designed to trigger under circumstances involving either leaks or spills.  During hours when the terminal is not manned, the alarm system initiates phone calls to the individuals that operate the terminal so they can respond.

Sometime on February 2, 2006, a valve on the truck loading rack was apparently inadvertently opened.  The opened valve allowed gasoline to flow into an underground oil/water separator, which was equipped with containment features and an alarm to notify KMST operators of the leak.  Unfortunately, the alarm failed to trigger, even though the defendants contend that it was tested regularly and had functioned properly within a day prior to the spill.

The plaintiffs argue that over 5000 gallons of gasoline had been pumped out from KMST's facility onto the plaintiffs' property over an approximate thirteen hour period before its discovery on the morning of February 3.  KMST's employee, Edwin

Mooney, discovered the gasoline pump-out when he smelled the odor of gasoline well before arriving at the facility on the morning of February 3.  Mr. Mooney has testified that he smelled gasoline while still riding to the facility in his vehicle on the adjacent public road.

Upon the arrival of KMST personnel and the discovery of the leak of gasoline onto the adjacent property, KMST employee Ralph Gatewood apparently shut off the subject ball valve by using his fingers on the protruding valve stem as the handle had been removed some years prior.  However, the plaintiffs argue that Gatewood did not immediately turn the valve off.  Instead, they assert that the KMST employees were standing around with the gas still flowing when a subcontractor's employee, Dan Saulters,  arrived and plugged the line from which the gasoline was leaking until the valve could be located and turned off by Gatewood.

KMST then notified the appropriate state and federal regulatory officers as well as URS Corporation ("URS"), who was retained to lead the remediation efforts and conduct soil and surface water sampling.  Upon completion of remediation efforts, URS performed the required soil and surface water sampling.  The results of the sampling indicated that the gasoline constituents were below the acceptable levels of the Mississippi Tier 1 TRG standards.  On July 24, 2006, URS Corporation, on behalf of Kinder Morgan, sent correspondence to the Mississippi Department of Environmental Quality ("MDEQ").  The correspondence included URS' report on the incident and stated,

> Based on visual inspections of the impacted area and the analytical data from surface soil and surface water samples collected during a three month period following the release, the impacted area has been sufficiently remediated. The

-3-

data indicates that no threat of migration of product to surface water, shallow soils or groundwater remains.

In response to URS Corporation's letter and sampling data and findings, the MDEQ issued a "No Further Action" letter on July 27, 2006.

On February 2, 2007, the plaintiffs filed suit in the Circuit Court of Covington County, Mississippi as a result of KMST's alleged actions and inactions in allowing the leakage of gasoline onto their property. The defendants removed the action to this court on March 5, 2007, on the basis of diversity of citizenship. The plaintiffs filed a motion to remand in both cases. The motion was mooted in the #47 case when the in-state defendants were voluntarily dismissed after the court denied a similar motion in the #48 case.

The plaintiffs' Complaint alleges that they are entitled to recover damages against KMST for negligence, gross negligence, strict liability, contamination of real property, battery to real property, private nuisance, and trespass. As a result of KMST's alleged conduct, the plaintiffs assert that they are entitled to recover damages for past and future loss of income from business operations, permanent and irreparable damage to real property, loss of use and enjoyment of real property, damages to and loss of potential crops including timber, attorney's fees and costs, and punitive damages.

KMST has filed a motion for summary judgment claiming that no issue of any material fact exists and that it should be given judgment as a matter of law, claiming that the plaintiffs have failed during the course of discovery to adduce any evidence that they have sustained any actual damages as a result of the incident at issue.

-4-

Specifically, they argue that because the evidence, depositions, and affidavits allegedly show that there is no evidence of compensatory damages as a result of the incident at issue, the plaintiffs' negligence, battery to real property, private nuisance, strict liability, and punitive damages claims must fail as a matter of law.  Further, because there is purportedly no evidence of a wilful tort committed by KMST against the plaintiffs, their claim for trespass must also fail as a matter of law.

The defendants argue that the plaintiffs did not designate any expert on the issue of damages while KMST designated two experts on this issue.  Each of the defendants' expert has purportedly opined that there is no impairment to the value or use of the plaintiffs' property.  The defendants also contend that the KMST designated URS personnel who oversaw the remediation have opined that the site was sufficiently remediated.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of

material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalia*n, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **NEGLIGENCE**

In this diversity suit, the substantive law of Mississippi applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In order to recover for negligent operation and/or maintenance, the plaintiffs "must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury." *Paz v. Brush Engineered Materials, Inc.*, 949 So.2d 1, 3 (Miss. 2007); (quoting *Miss. Dep't of Mental Health v. Hall*, 936 So.2d 917, 922 (Miss. 2006)); *See also Sellars ex rel. Dill v. Walgreen Co.*, 971 So.2d 1278, 1279 (Miss. App. 2008) (To overcome summary judgment, a plaintiff must show a genuine issue regarding each of the four elements of negligence).

Under the umbrella of their negligence claim the plaintiffs have brought suit seeking damages for loss of past and future income from business operations, diminution in value, loss of use and enjoyment, loss of potential crops, and *Res Ipsa Loquitor*.

**Loss of Business Income**

As to the plaintiffs' loss of income from business operations, the plaintiffs respond merely that they have previously sold timber from the property in the #47 case. The plaintiffs in the #48 case have presented no evidence.  There has been no testimony nor other evidence offered to show any other loss of business income or profits.  To the contrary, many of the plaintiffs have specifically testified that there has been no such damage.  Conversely, Albert Wilson, one of the defendants' experts has opined, "There is no impediment to the use or development of the Lewis property resulting from the spill."   Additionally, KMST's real estate appraiser, Fred Buhrer, has testified that, "There are no limits on land use."  There simply is no evidence of loss of income from business operations which has been presented to the court as a separate item of damages.

**Diminution in Value**

The plaintiffs argue that they are reasonably certain to suffer future damage and devaluation of their property interest and damages for permanent and irreparable damage to real property, *i.e.*, a diminution in the property's value.  Mississippi common law does not allow recovery for a decrease in property value caused by a public perception without accompanying physical harm to the property.  *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir.1993).  The plaintiffs may recover under Mississippi law for reduced market value caused by a "stigma" upon a showing of some permanent and physical injury to their land caused by KMST.  *See Leaf River Forest*

*Products, Inc. v. Ferguson*, 662 So.2d 648, 663 (Miss. 1995); *Berry v. Armstrong Rubber Co.*, 780 F.Supp. 1097, 1104 (S.D.Miss. 1991), *aff'd*, 989 F.2d 822, 828 (5th Cir.1993); and *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168 (5th Cir. 1997).

If the damage to the land is permanent, the measure thereof is usually the difference between the fair market value of the entire tract before the injury and the fair market value after the injury. *Bynum v. Mandrel Ind., Inc.*, 241 So.2d 629, 634 (Miss. 1970)(quoting *Sun Oil Company v. Nunnery*, 251 Miss. 631, 170 So.2d 24 (1964) and citing *Baker v. Miss. State Highway Commission*, 204 Miss. 166, 37 So.2d 169 (1948)).

The defendants support their argument against diminution by pointing out that URS Corporation led the remediation efforts and conducted soil and surface water sampling on the impacted area. URS took surface soil samples on two occasions for gasoline constituent analysis: February 5, 2006 and May 3, 2006. Testing results showed that those constituents either were undetectable, or were orders of magnitude below what is allowed by the Mississippi Tier 1 TRG standards. Those are residential standards and contemplate 24-hour exposure to the constituents in question. Thus, according to the defendants' experts, the soil and surface water sampling performed by URS established that the impacted area was sufficiently remediated.

That determination was apparently supported by the Mississippi DEQ, which issued a letter notifying KMST that no further remediation was required. Therefore, the defendants assert that there is absolutely no evidence of any permanent damage to the property sufficient to support a damages claim. Additionally, KMST retained Mr. Albert Wilson, an expert with nationwide experience in assessing values of land that

have been impacted by varying forms of environmental exposure, to determine whether this gasoline spill had diminished the value of the adjoining property owners' land.  In Wilson's affidavit, he said "[t]he fact that the Mississippi DEQ issued a No Further Action letter with respect to the incident is further support for my opinion that there exists no diminution of value of the subject properties as a result of the February 3, 2006 incident."

KMST also retained a local appraiser, Mr. Fred Buhrer, to assess the value of the plaintiffs' land.  In his affidavit, Mr. Buhrer said "[t]he subject property had a gasoline spill on a small portion of the property with no adverse effect on market value, because the property was completely cleaned and given a No Further Action by the Mississippi DEQ."  The plaintiffs have not retained any expert to conduct soil sampling to rebut URS' findings or the opinions of Mr. Wilson and Mr. Buhrer, nor have they retained any expert to render an opinion regarding permanent damage to their property.

Instead, the plaintiffs rely on the opinions of the landowners themselves to show a diminution in the value of the realty.  The Federal Rules of Evidence permit a landowner to testify as an expert as to the value of his land.  *See* Fed. R. Evid. 702, advisory committee note ("within the scope of the rule are not only experts in the strictest sense of the word...but also the large group sometimes called 'skilled' witnesses, such as...landowners testifying to land values."); *see also Certain Underwriters at Lloyd's, London v. Coastal Builders, Inc.*, 2007 WL 2826880 at *2 (S.D. Miss. Sep. 25, 2007).

Unlike other expert witnesses, "the opinion of a landowner as to the value of his land is admissible without further qualification." *U.S. v. 329.73 Acres of Land*, 666 F.2d

-11-

281, 284 (5ᵗʰ Cir. 1981) (affirming verdict based on landowner testimony even though testimony "was not based on any accepted method of valuation."). The purpose of the rule is that an owner "is deemed to have sufficient knowledge of the price paid, the rents and other income received, and the possibilities of the land for use, to render an opinion as to the value of the land." *See United States v. 68.94 Acres of Land*, 918 F.2d 389, 398 (3ʳᵈ Cir. 1990) (*citing* Nichols, The Law of Eminent Domain § 23.03 at 23-30 (1990)). A landowner's testimony about the value of his land is admissible "despite the fact that he may have been relying to some extent on hearsay." *Lacombe v. A-T-O, Inc.*, 679 F.2d 431, 435 (5ᵗʰ Cir. 1982).

Although landowners are permitted to testify because of their special knowledge of the property presumed to arise out of ownership, their resulting valuation "cannot be based on naked conjecture or solely speculative factors." *King v. Ames*, 179 F.3d 370, 376 (5ᵗʰ Cir. 1999).[1] At a minimum, it must offer specific facts that translate into a reduced market value for the property. *See Gochman v. Oakley*, 44 Fed. Appx. 652, 654 (5ᵗʰ Cir. 2002) (citations omitted) (refusing to permit testimony that, among other shortcomings, "did not even attest to the market value of the property...but only as to the amount of its alleged diminution in value...[and] offered no factual support for this assertion."). The Rule does not permit testimony "where the owner merely repeats the opinion of an expert witness whose testimony has been previously excluded." *See United States v. 68.94 Acres of Land*, 918 F.2d 389, 398 (3ʳᵈ Cir. 1990) (refusing to

---

[1] As the Tenth Circuit has stated, "[t]here must be a basis for the landowner's valuation, and when the landowner's own testimony shows that his valuation has no probative value, the district court may determine that the landowner's testimony alone is insufficient to support a jury verdict." *U.S. v. 10,031.98 Acres of Land*, 850 F.2d 634, 637 (10ᵗʰ Cir. 1988).

permit landowner to testify to opinion of expert whose testimony had been previously excluded by the court for violation of a pre-trial order).

The testifying landowner must demonstrate "some knowledge of land values in the neighborhood or [give] the jury some evidence on which he bases his fair market value testimony." *Bynum*, 241 So.3d at 636. "This means, of course, that although a land owner may testify as to the value of his land, the weight of his testimony is affected by his knowledge of fair market value." *Id.,* (*ciing* 20 Am.Jur. Evidence § 892, p. 751 (1939); Orgel on Valuation Under Eminent Domain, Vol. 1, 2d Ed., § 132, p. 564 (1953)).

The plaintiffs in the #47case offer the testimony that has been given by two of the landowners as to their opinion of the value of the property, those being Jimmie Baggett and John Keyes. Mr. Baggett is the Chancery Clerk of Covington County, Mississippi, and is responsible for recording land transactions, oil and gas transactions, and keeping county land records. The plaintiffs assert that Mr. Baggett is aware of the location of the property and the sales of similar property in the area, and has expressed his opinion on the value of the property before and after the gasoline pump-out, based on this knowledge. *See*, Deposition of Jimmie Baggett pp.22-32.

John Keyes has been an attorney since 1948 and has handled numerous real estate transactions and sales, in addition to buying and selling property on his own. He has also been involved in lawsuits involving real property and has handled 300 to 400 eminent domain cases which involved the sole question of property value. *See* Deposition of John Keyes, p. 11. Based upon this experience, Mr. Keyes has given testimony concerning the value of the property before and after the spill. In addition,

Rhondale Barker testified that he had intended to try to purchase the plaintiffs' property since it adjoined his, but wouldn't do it now because of the gasoline pump-out and because of the continued existence of the concrete flume extending onto the property from the defendants' premises.

The plaintiffs also argue that while the MDEQ has accepted the defendants' sampling results which indicate that the toxic constituent levels on the property are below Tier 1 TRG levels and has indicated that no further remedial action is required, there is no finding or sampling result which shows that the toxic constituents are no longer present.  Thus, according to the plaintiffs, a jury question exists as to whether the finder of fact believes the property owners or if they believe the defendant's experts, who claim that the property is not adversely affected by the spill of gasoline.

Suffice it to say that the plaintiffs have an uphill battle on the issue of damages for a diminution in value of the realty in question.  They have offered and will be allowed to testify at trial as to their opinions as to market value before and after the spill to the extent that such is probative and helpful to the jury.  The plaintiffs will have to first satisfy the court that their valuation opinions have a sound and reasonable basis in fact and offer specific facts that translate into a reduced market value for the property.  *See Gochman v. Oakley*, 44 Fed. Appx. at 654.  They will not be allowed to offer naked speculation or conjecture as to property values.  *See  King v. Ames*, 179 F.3d at 376. That being said, the plaintiffs have offered evidence sufficient to defeat summary judgment on this issue.

**Loss of Use and Enjoyment**

A claim for interference with the use and enjoyment of real property is "more accurately described as a claim for private nuisance, and the terms are sometimes used interchangeably." *Williams v. King*, 860 So.2d 847, 851 (Miss. App. 2003). A "private nuisance is a nontrespassory invasion of another's interest in the use and enjoyment of his property." *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d at 662, (*citing Bowen v. Flaherty*, 601 So.2d 860, 862 (Miss.1992)). A private nuisance does not require actual, physical invasion of property. The elements of private nuisance are outlined in *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So.2d 857 (Miss.1988):

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> > (a) intentional and unreasonable, or
> >
> > (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

521 So.2d at 859-60 (*quoting* Restatement (Second) of Torts § 822); *see also, Biglane v. Under The Hill Corp.*, 949 So.2d 9 (Miss. 2007). Each private nuisance case must be decided upon its own peculiar facts, taking into consideration the location and the surrounding circumstances." *Id.* at 15.

The defendants argue that the plaintiffs have brought forth no evidence of loss of use or enjoyment of their property or private nuisance. They point out that many of the plaintiffs have never stepped foot on the subject property, while some of the plaintiffs

have merely driven by the property and seen it through a car window.  None of the plaintiffs have pointed to any loss of use or enjoyment of the property.

In response, the plaintiffs point to the cleanup and remediation operations on their property - the digging of berms and ditches, and the placing of equipment on the property - as a loss of use and enjoyment.  They then state that "the Plaintiffs couldn't have enjoyed the property if they had wanted to!"  The plaintiffs' claim for loss of use and enjoyment could have been proven if they were prevented from using all or a portion of the property during the remediation process.  Damages for such could be established by proving loss of rental value or loss of income during this period.  The burden is on the plaintiffs to show that the spill in some way caused the plaintiffs to suffer a loss of use and enjoyment.  The plaintiffs have failed to offer any evidence which would create a genuine issue of fact on this issue.

**Damage to or Loss of Potential Crops**

The defendants next assail the plaintiffs' averment that they have sustained injuries for damage to and loss of potential crops, including timber.  They argue the unrefuted testimony from KMST's experts is that the site was sufficiently remediated as evidenced by the soil sample data and the "No Further Action Letter" from the MDEQ. Therefore, according to the defendants, there is no impediment to any use of the subject property as a result of the spill.

The only crop which the plaintiffs in the #47 case have ever grown on their property is timber; and they admitted that they did not grow or harvest any marketable crop on their property subsequent to the day of the spill, "other than any timber that

might have been remaining after the removal of timber prior to February 3, 2006".  The testimony and documents produced make it clear that the plaintiffs sold the timber from their land in the Spring of 2005.  Importantly, while logging began prior to the spill, it did not cease until eight months after the spill.  Since the logging contract ended and the logging operations ceased, the plaintiffs have made no effort to replant the tress or any marketable crop on their land, and they have not discussed any plans for the use of the property.

The plaintiffs have not designated any expert to testify regarding this element of damages, and therefore, the plaintiffs have no basis to rebut KMST's experts.  The plaintiffs only respond with anecdotal quips and nonsensical remarks regarding the difficulties of growing crops in the specific area where the remediation occurred while the operation was in progress.  Damage to or loss of timber growing potential can be easily proven by proper expert testimony.  The plaintiffs, however, in both cases have failed to offer one scintilla of evidence from which a reasonable juror could conclude that they suffered any damage to or loss of potential crops.

### *Res Ipsa Loquitur*

The plaintiffs assert KMST is liable to them under the theory of *Res Ipsa Loquitur.  Res Ipsa Loquitur* is a rule of evidence which allows negligence to be inferred in certain fact situations.  *Winters v. Wright*, 869 So.2d 357, 363 (Miss. 2003).  The Mississippi Supreme Court has set forth the elements of *Res Ipsa Loquitur* as follows:

1)     the instrumentality causing the damage must be under the exclusive control of the defendant,

2)      the occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care, and

3)      the occurrence must not be due to any voluntary act on the part of the plaintiff.

*Winters*, 869 So.2d at 262; *Powell v. Methodist Health Care-Jackson Hospitals*, 876 So.2d 347, 349 (Miss. 2004).  Where all of the elements of *Res Ipsa Loquitur* are met, a rebuttable presumption of negligence is raised.  *Coleman v. Rice*, 706 So.2d 696, 698 (Miss. 1997).

The defendants' only argument in this regard is that *Res Ipsa Loquitur* requires the plaintiffs to prove damages.  As stated above, the defendants assert that the plaintiffs have not and cannot prove damage to their property and that as such, the plaintiffs' theory of *Res Ipsa Loquitur* should be rejected.  However, the court has previously found that the plaintiffs have created a genuine issue of damages on diminution of value of the subject property and thus the defendants' argument falls on its own sword.

## STRICT LIABILITY

The plaintiffs contend that KMST is strictly liable to them for damages to their property.  However, KMST argues that because it has purportedly established that the plaintiffs did not sustain actual damage, the strict liability claim should be dismissed.  That, of course, is not the case.  The court has concluded that the plaintiffs have pointed to a genuine issue of fact on the damages issue.  If this was the only argument of the defendants on this topic, that would be the end of it.  However, as a separate and

-18-

independent basis for dismissal of this claim the defendants argue that the plaintiffs have failed to adduce any evidence to prove that that KMST'S operation of the Collins Terminal constitutes an ultrahazardous activity so as to impose strict liability.

"Mississippi law requires participation in an ultrahazardous activity before strict liability can be imposed for harm from industrial operations." *Bradley v. Armstrong Rubber Co.*, 130 F.3d at 174 . The defendants contend that there is no evidence that KMST's terminal operations would be classified as "ultrahazardous" under Mississippi law. Strict liability for ultrahazardous activity has only been found by Mississippi courts in cases involving the use and transport of explosives in populated areas. *Whitfield v. Tronox Worldwide LLC*, 2007 WL 1561807 (N.D.Miss. 2007) (*citing Donald v. Amoco Products Co.*, 735 So.2d 161, 170 (Miss.1999); *Teledyne Exploration Co. v. Dickerson*, 253 So.2d 817, 818 (Miss.1971); *Sprankle v. Bower Ammonia and Chem. Co.*, 824 F.2d 409, 415 (5th Cir.1987). The Fifth Circuit stated in *Sprankle*:

> The notion that a party engaged in an ultrahazardous or abnormally dangerous activity should be held strictly liable for resulting damages originated in the well-known English case, Rylands v. Fletcher, L.R. 3 H.L. 330 (1868), aff'g L.R. 1 Ex. 265 (1866), rev'g 3 H. & C. 774, 159 Eng.Rep. 737 (1865)…The theory of liability that developed from Rylands and subsequent English cases is "that the defendant will be liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings." Prosser & Keeton on Torts § 78, at 547-48 (W. Keeton 5th ed. 1984). Modern courts have generally applied the Rylands doctrine of strict liability only to activities "variously characterized as 'perilous,' 'ultra-or extra-hazardous,' or 'abnormally 43 See [Doc. 1], ¶ 17. Case 2:07-cv-00047- KS-MTP Document 132 Filed 05/15/2008 Page 12 of 20 13 dangerous,'" Sterling v. Velsicol Chemical Corp., 647 F.Supp. 303, 312- 13 (W.D.Tenn.1986) (citations omitted), and only where the activity is inappropriate to the place or location where it is carried on. See Prosser & Keeton on Torts, supra, § 78 and cases cited therein.

824 F.2d at 414.

The plaintiffs only response is that gasoline is explosive.  There is no evidence to suggest that the storage of gasoline at the KMST Collins facility and the use of a loading rack to load and unload gasoline into tank trucks is an ultrahazardous, abnormally dangerous, or inappropriate in character with its surroundings.  The plaintiffs have not adduced any evidence to warrant a departure from established Mississippi jurisprudence limiting  the activities considered ultrahazardous.


**PUNITIVE DAMAGES**

The plaintiffs assert that  KMST's conduct "has been and continues to be malicious, intentional, willful, wanton, grossly negligent, careless, indifferent and reckless."  They further contend "the actions of the Defendants were willful, or in the alternative, were so careless so as to constitute a careless, reckless, negligent/grossly negligent, wanton and callous disregard for the safety of the Plaintiffs entitling the Plaintiffs to an award of attorney's fees, costs and punitive or exemplary damages."

It is well settled in Mississippi that punitive damages are to be assessed only in extreme cases.  See *Gardner v. Jones*, 464 So. 2d 1144, 1148 (Miss. 1985).  "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits."  *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So.2d 620, 622 (Miss.1988).  Further,

> [a]s a general rule, exemplary or punitive damages are 'added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong. The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others.

*Summers ex rel. Dawson v. St. Andrew's Episcopal School, Inc.*, 759 So.2d 1203, 1215

(Miss.2000) (citing *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 150-51,141 So.2d 226, 233 (1962)).  See also, *Paracelsus Health Care Corp. v. Willard*, 754 So.2d 437, 442 (Miss.1999).  "In order to warrant the recovery of punitive damages, there must enter into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule."  *Id.* (citing 15 Am.Jur., Damages, Sec. 265, p. 698).  When deciding whether to submit the issue of punitive damages to a trier of fact, the court is required to examine the totality of the circumstances as established by the record, to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard in order to justify the imposition of punitive damages.  See *Ross-King-Walker, Inc. v. Henson*, 672 So.2d 1188, 1191 (Miss.1996).

Based on the foregoing well settled principles of law, the Mississippi Supreme Court has instructed that "in order for the issue of punitive damages to warrant jury consideration, [the plaintiff] must show that a question of fact exists as to whether the aggregate of [the defendants'] conduct . . . evidences willful or wanton conduct or the commission of fraud.  *Bradfield v. Schwartz*, 936 So.2d 931, 938 (Miss. 2006).  The *Bradfield* Court went on to discuss the statutory procedure for the determination of whether the issue of punitive damages should ultimately be presented to the jury.  In so doing, the court quoted the language of Miss. Code Ann. § 11-1-65 which provides

(1) In any action in which punitive damages are sought:

(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

(b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.

(c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact.

(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.

Miss. Code Ann. § 11-1-65(1)(a)-(d).  In *Bradfield,* the court held that once the jury returned a verdict for compensatory damages, the circuit court "should have automatically proceeded, consistent with the applicable statutory provisions," to the punitive damages phase of the trial, where evidence concerning punitive damages could be presented separately at a subsequent evidentiary hearing.  *Id.* at 940.

The defendants' first argument against punitive damages fails, *i.e.*, that there is no proof of actual damages.  The court has held that there are genuine issues of fact regarding actual damages.  However, the defendants argue separately for dismissing the plaintiffs' punitive damage claim that there is a complete absence of any evidence that KMST acted with reckless conduct sufficient to support a punitive damages claim.

The plaintiffs respond and state that the absence of a control arm on the valve and a device to lock it out along with the failed alarm system is evidence of gross negligence or reckless conduct.  There is certainly conflicting evidence regarding the conduct of the defendants and their compliance with their obligation not to allow this toxic substance to escape its control.  However, the case for punitive damages appears to be weak at best

at this point.  Under Mississippi's bifurcated procedure for presenting the issue of punitive damages to the jury, the court will be called upon to make a decision to submit the issue only if compensatory damages are awarded.  The court will be in a better position to assess the evidence on this issue at the conclusion of the testimony and thus reserves ruling at this time.

## TRESPASS/BATTERY TO PROPERTY

The plaintiffs' next claim is that the "leak, release, and discharge and the resulting contamination of the real property of the Plaintiffs as referenced herein is an invasion of the Plaintiffs' real property and constitutes a trespass."  The same averment applies to the plaintiffs' assertion that a battery was committed on their property.  The defendants once again attack on the basis of lack of proof of actual damages. The court has stated its finding on that issue.  Secondarily, the defendants assert that the plaintiff must show wilful conduct on the part of KMST in order to recover for trespass or battery.

The Mississippi Supreme Court has held, regarding a trespass, negligence and the intent requirement:

> [N]egligence is not necessary for common law trespass liability. Furthermore, while there is an intent requirement, it is very broad in definition as demonstrated in the Restatement (Second) § 163 above. Common law trespass is an intrusion upon the land of another without a license or other right for one's own purpose. *Saucier v. Biloxi Regional Med. Ctr.*, 708 So.2d 1351, 1357 (Miss.1998); *Skelton v.Twin County Rural Elec. Ass'n*, 611 So.2d 931, 936 (Miss.1992); *Hoffman v. Planters Gin Co., Inc.*, 358 So.2d 1008, 1011 (Miss.1978); *Marlon Inv. Co. v. Conner*, 246 Miss. 343, 349, 149 So.2d 312 (1963); *Kelley v. Sportsmen's Speedway, Inc.*, 224 Miss. 632, 643, 80 So.2d 785, 790 (1955).

*Thomas v Harrah's Vicksburg Corp.*, 734 So.2d 312, 316 (Miss. 1999).  That standard has been met in this case.  The court, however, does not find the plaintiffs' separate

-23-

battery argument compelling, but considers it a matter of semantics.

In the final analysis, the court is not convinced that the labeling of the plaintiffs' claims is as important as the defendants urge or as perhaps the plaintiffs contend. The Fifth Circuit, interpreting Mississippi law, has held:

> Our examination of Mississippi law indicates that on the facts of this case nuisance, trespass, and strict liability are not separate theories of liability. Mississippi allows a plaintiff damaged by a physical invasion to its land to recover upon a simple showing that the defendant was responsible for the physical invasion.
>
> . . .
>
> The label that a court attaches to the theory under which it holds a defendant liable does not appear to be of critical importance. Mississippi clearly allows a plaintiff to recover damages to land caused by a physical invasion of the plaintiff's land by an agency put in motion by the defendant, even if the defendant has not been negligent.

*City of Jackson, Miss. v. Filtrol Corp.*, 624 F.2d 1384, 1389-90 (5th Cir. 1980).  In this case, there has been an actual physical invasion of the plaintiffs' property of an agent under the exclusive control of the defendants.  It matters not whether there is negligence or intentional conduct involved.  The plaintiffs are entitled to recover for any damages they can show were caused by the invasion. In this regard, they have shown evidence which creates a genuine issue of material fact regarding whether the subject realty was permanently damaged in value by the spill.  If they can show actual damages, they may then be entitled to offer proof of gross negligence or reckless conduct to support a punitive instruction to the jury.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motions for Summary Judgment **[#131** in 2:07cv47 and **#117** in 2:07cv48**]** filed on behalf of the defendants in each of these two cases are denied subject to the limitations on the plaintiffs'

-24-

presentation of evidence on specific items of damages upon which the court has found the plaintiffs failed to sufficiently present evidence.  These limitations will be further delineated in separate orders on the pending Motions in Limine in each case.

SO ORDERED AND ADJUDGED this the 6th day or August, 2008.


_____s/Keith Starrett
                              UNITED STATES DISTRICT JUDGE