**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**RUTH LEWIS; LINDA HAYES COULTER;
JAMES HAYES; JOHN KEYES; VERRIS MAGEE;
ROBERT MAGEE; JIMMIE BAGGETT; and
GLEN ROGERS**                                                                    **PLAINTIFFS**

**VERSUS**                                        **CIVIL ACTION NO. 2:07cv47KS-MTP**

**KINDER MORGAN SOUTHEAST
TERMINALS, LLC; DOES 1-10, ET AL**                             **DEFENDANTS**


**AND**


**RHONDALE L. BARKER AND
EARL CRAFT**                                                                      **PLAINTIFFS**

**VERSUS**                                        **CIVIL ACTION NO. 2:07cv48KS-MTP**

**KINDER MORGAN SOUTHEAST
TERMINALS, LLC; DOES 1-10, ET AL**                             **DEFENDANTS**


<u>**ORDER**</u>

This matter is before the court on a Motion to Exclude Expert Testimony **[#134 in
2:07cv47 and #120 in 2:07cv48]** filed on behalf of the defendants in each of these two
cases.  The court, having reviewed the motions,  the pleadings and exhibits on file in
each case and being advised that the plaintiffs have failed to respond in either case,
finds that the motions should granted.  The court specifically finds as follows:

## FACTUAL BACKGROUND

This case involves the spillage of gasoline from a bulk storage terminal in Collins, Mississippi, owned and operated by Kinder Morgan Southeast Terminals, LLC ("KMST").  The plaintiffs claim they are entitled to damages and punitive damages for negligence, battery to real property, private nuisance, strict liability, and trespass as a result of a gasoline release from the KMST terminal facility in Collins, Mississippi, on February 2-3, 2006.  The source of the spill was determined to be a drain valve at the truck loading rack at the facility.  The court has previously set forth the facts regarding these two cases in separate opinions on summary judgment motions and will not repeat them here.

During the course of the case, the plaintiffs designated Douglas C. Buchan as their expert to address KMST'S operation of the Collins Terminal and to support their negligence and punitive damages claims.  The designation filed by the plaintiffs' counsel contained the report of Buchan that detailed his opinions and the purported facts on which he relied in forming those opinions.  Counsel for KMST then took Buchan's deposition on May 6, 2008.

Buchan's opinions, as detailed in his report, essentially were that KMST was negligent in its operation of the Collins Terminal.  In support of that opinion, he stated that KMST violated rules promulgated by the EPA which set forth requirements for Spill Prevention, Control and Countermeasure (SPCC Rules).  Those requirements are applicable to facilities like the Collins Terminal and are geared toward the prevention of spills.  Based on those opinions, Buchan has concluded that KMST was "grossly negligent" and "reckless" in its operation of the terminal.

-2-

The defendants have filed the present motion contending that Buchan's opinions are not reliable and are speculative because he allegedly conducted an inadequate investigation into the facts and circumstances surrounding the spill.  The defendants contend that Buchan failed to read any of the depositions of the critical witnesses, and failed to read virtually any of the essential documents in this case, including KMST'S SPCC Plan or its inspection and maintenance records.

The defendants also argue that Buchan does not posses the knowledge, education, skill, training or experience required by Rule 702 of the Federal Rules of Evidence to render his opinions and/or that he has not employed acceptable methodologies.  Alternatively, the defendants assert that Buchan's opinions should be strictly limited to those areas in which he can demonstrate adequate qualifications and that he should be precluded from providing any opinions at trial relative to KMST being negligent or at fault as those opinions invade the province of the jury.

## **ADMISSIBILITY OF EXPERT TESTIMONY**

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts.  The initial reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases.  The Supreme Court in *Daubert* said the *Frye* general

acceptance test for expert testimony had been superseded by Rule 702 of the Federal

Rules of Evidence which went into effect in 1975.  Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of
> fact to understand the evidence or determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise.

A primary requisite of the rule is that the evidence or testimony "assist the trier of

fact to understand the evidence or determine a fact in issue."  The commentators

universally agree that the effect of *Daubert* was not the loosening of the allowance of

expert testimony but in fact a tightening thereof.  In fact when *Daubert* was vacated and

remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's

exclusion of the plaintiff's expert witnesses based on the new standard enunciated in

*Daubert*.  *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th

Cir. 1995).  Thereafter the United States Supreme Court denied certiorari.  *Daubert, et*

*al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126

(1995).

The cases and commentaries interpreting *Daubert* are legion at this point.  The

Supreme Court in *Daubert* enumerated several factors to be considered by the trial

court in determining whether or not a particular expert witness's testimony was relevant

and reliable to the point that it should be allowed in federal court.  Those factors are not

exclusive and were merely presented as a guideline.  The federal courts were

instructed that the *Daubert* standard is "a flexible one" to be applied according to the

facts and circumstances of each individual case.  509 U.S. at 594.

After *Daubert*, there was much discussion as to whether or not it applied merely to cases involving scientific knowledge or whether it should be expanded to include all expert testimony regardless of its scientific basis.  The Supreme Court answered that question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999).  The *Kumho* court held

> We conclude that *Daubert's* general holding--setting forth the trial judge's general "gatekeeping" obligation--applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.

119 S. Ct. at 1171.  Ultimately "the objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony."  *Kumho*, 119 S. Ct. at 1176.  In *Kumho* "the relevant issue was whether the expert could reliably determine the cause of [the] tire's separation."  119 S. Ct. at 1177.

This court has been instructed by *Kumho* interpreting *Daubert* that the opinions stated by Buchan are not the object of the relevancy and reliability determination but instead the court is required to determine the reliability of his basis for arriving at those conclusions. 119 S.Ct. at 1177.  The factors set forth in *Daubert* and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community.

This court recognizes that several of the factors listed above are not relevant to a

determination of the issue before this court.  Therein lies the flexibility of the

gatekeeping responsibility as mandated by the Supreme Court.  As the Fifth Circuit has

noted, several prior opinions on admissibility of expert testimony placed undue

emphasis on *qualifications* of a particular expert witness over the  *reliability* of that

expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility.  *See,*

*Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997).  In this age of "post-*Daubert*"

sensibility, especially as enlightened by the United States Supreme Court's

pronouncement in *Kumho*, the trial courts were instructed to carefully execute the

responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert* and the many cases applying *Daubert*, including *Kumho*,

Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding

three requirements for the admissibility of expert testimony.  *See Hodges v. Mack*

*Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006).  As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to
> understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto
> in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of

expert testimony under Rule 702, as amended.  *See Guy v. Crown Equipment Corp*.

394 F.3d 320, 325 (5th Cir. 2004).  In assessing the basis of an expert's proposed

testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly

on his personal observations, professional experience, education and training."

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).  Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry.  *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004).  The proponent of the expert testimony must prove reliability by a preponderance of the evidence.  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc).  "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007)(*quoting Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).


## **ANALYSIS**

The stated scope of Buchan's retention on behalf of the plaintiffs was "to investigate the site, to make assessment of what [he] felt would have prevented this incident from happening, as well [as] the industry best practices that [he] understand[s] and the equipment that's available to prevent this type of accident from happening."  Deposition of Douglas Buchan, p.17.   Buchan signed the Preliminary Expert Witness Disclosure containing his report on January 24, 2008.  The defendants attack the report as nothing more than conclusory opinions without any apparent factual support.  After reviewing the matter carefully, the court concurs with the defendants' conclusion.

The portion of Buchan's report that contains his ultimate opinions and conclusions reads as follows:

It is further opined, after reviewing the incident reports and related materials along with a site inspection that Defendant, Kinder Morgan was negligent, irresponsible, reckless and grossly negligent in their failure to implement EPA's Spill Prevention, Control, and Countermeasure (SPCC) Rule that would have prevented the subject gasoline discharge. They were negligent, irresponsible, reckless and grossly negligent in their failure to meet the minimum requirements of EPA, as well as their failure to upgrade and provide the required containment facilities and equipment that would have ensured that the fugitive gasoline would not have been allowed to leave their terminal facility and contaminate the subject adjacent properties. Defendant, Kinder Morgan was not acting as a reasonable, prudent, petroleum products terminal operator. Such conduct set into motion the sequence of events which resulted in the contamination of the subject adjacent properties.

As identified in this preliminary report, the aforementioned failures of Defendant, Kinder Morgan caused the fugitive gasoline release and the subsequent property contamination.

Preliminary Expert Witness Disclosure, Douglas Buchan, pgs. 3-4.

Buchan is a high school graduate with one year of college.  He left college to work in the oil and gas business and is a self-professed "energy expert with over 40 years expertise in the gas and petroleum products industry."  However, he testified that he "doesn't recall ever seeing this [type of incident] before."

The defendants first assail Buchan's alleged lack of knowledge, skill, experience, training, or education regarding SPCC regulations.  As pointed out by the defendants, a predominant basis for Buchan's opinions that KMST acted improperly is his assertion that KMST violated unspecified Spill Prevention, Control and Countermeasure (SPCC) Rules promulgated by the EPA which are applicable to facilities like the Collins Terminal and are geared toward the prevention of spills.

Those rules require covered facilities to prepare SPCC Plans addressing spill prevention and control and to have those plans certified by a professional engineer.  It is not disputed that KMST had in place a SPCC plan at the time of the spill, and that the

-8-

Plan was produced to opposing counsel during the course of discovery.  However, Buchan testified in his deposition that he never saw the KMST SPCC Plan and did not know its contents.

Further, Buchan acknowledged that this case is the first time that he has ever been retained in any capacity to render opinions regarding SPCC Rules or a company's compliance with those rules.  He has never been qualified to testify as an expert on SPCC rules or regulations, he has never been tendered as an expert on interpretation and enforcement of SPCC rules, he has never conducted any inspections to determine SPCC compliance, and he has never taken any courses or seminars dealing with the implementation of SPCC rules.  He has never prepared an SPCC plan for any company or client, and he has no training regarding SPCC compliance.

At his deposition, Buchan could not readily answer the question: "Which particular SPCC rule do you believe that Kinder Morgan was negligent in implementing as per the statement in your report?"  Ultimately, Buchan admitted that his "opinion" regarding SPCC rule violations as contained in his report of January 20, 2008, was based primarily on a Proposed EPA Settlement Agreement prepared by the EPA that was not agreed to by KMST and has not been executed by either KMST or the EPA to date.  However, the Proposed EPA Settlement Agreement on which Buchan allegedly relied when he prepared his report was not produced by KMST to the plaintiffs' counsel until February 20, 2008; almost one month after Buchan signed his report.

An additional example of Buchan's alleged lack of qualifications was revealed in his deposition when, after pausing to read the SPCC rules for a lengthy period of time, he claimed that KMST violated SPCC Rule 112.7(h), which also was referenced in the

Proposed EPA Settlement Agreement.  SPCC Rule 112.7(h) provides that "You must design any containment system to hold at least the maximum capacity of any single compartment of a tank car or tank truck loaded or unloaded at the facility."

However, when questioned, Buchan did not know the maximum capacity of the largest tank car or truck serviced at the Collins Terminal, and he did not have any information regarding the secondary containment system."  The defendants contend that if he understood the rule, he would know that if he does not know the volume of the containment system or of the largest tank truck, then he can't know whether the containment system was sufficient, and therefore, can't know whether there was a violation of the Rule.

Buchan testified that he wrote his report based on his site visit, discussions he overheard while on his site visit, certain reports, and his own personal experience in the industry.  However, he did not review any of the depositions taken of any witness, including the three KMST employees responsible for running the terminal and conducting the regular inspections and maintenance.  The only thing he related overhearing on his visit was a confirmation that the valve which was opened was a ball type valve, a subject not open to dispute.

Buchan did not review KMST'S SPCC plan, KMST'S operations manuals, maintenance logs, inspection records, or testing records, or KMST'S training materials. Thus, according to the defendants, because a number of the SPCC rules relate to an entity's inspection procedures and compliance with its SPCC plan, it is obvious that Buchan lacks sufficient facts or data to render opinions regarding SPCC rules since Buchan had never even read KMST'S SPCC plan. The court agrees that Buchan has

demonstrated a colossal lack of facts and data on this issue and is alone a basis to preclude his testimony regarding SPCC rules and alleged violations.

In his deposition, Buchan offered only two opinions regarding alleged negligence on the part of KMST: 1) KMST should not have used a ball valve in the drain line of the loading rack, and 2) KMST should have had a locking device on the valve when it was not in use. He had no other opinion relative to negligence on the part of KMST.  Yet, Buchan could not point to any rule or regulation which prohibits the use of a ball valve as used in this case, and specifically,  Buchan stated, "I'd have to do some other research. I'm sure they're out there, but to get that specific, nothing's going to get that specific."  Likewise, when asked to describe the circumstances under which one should or should not use a ball valve, Buchan stated, "Nothing's going to provide that."   It is important to note that when asked if he had any specific information about whether the valve at issue in this case was "easy to open at the time it was actually opened," Buchan replied, "That would have to be answered after destructive testing on the valve. I do not know."  When asked if he had an opinion as to what went wrong, i.e. what pieces of equipment failed to function, Buchan simply stated, "I don't have that information."

<u>Conclusion</u>

Thus, while the Mr. Buchan may well be a qualified expert in the area of pipeline safety as found by other district courts, he has failed to demonstrate the requisite knowledge, skill, education, training and experience or sufficient facts or data upon which he based his opinions to pass the reliability or relevance tests required in a

*Daubert* analysis.  It was incumbent upon the plaintiffs to show Buchan's qualification as an expert by a preponderance of the evidence.  They did not.  Therefore, the defendants' motion to exclude Buchan's testimony should be granted.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Exclude Expert Testimony **[#134 in 2:07cv47 and #120 in 2:07cv48]** filed on behalf of the defendants in each of these two cases is granted and the testimony of Douglas C. Buchan is excluded.

SO ORDERED AND ADJUDGED this the 7th day or August, 2008.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE